IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JUDY POMERANTZ, § | | |
|     Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. H-12-3479 | |
| § | | |
| HOUSTON METHODIST § | | |
| HOSPITAL, § | | |
|     Defendant. § | | |

**MEMORANDUM AND ORDER**

This case is before the Court on the Motion for Summary Judgment ("Motion") [Doc. # 27] filed by Defendant Houston Methodist Hospital ("Methodist"), to which Plaintiff Judy Pomerantz filed a Response [Doc. # 32], and Methodist filed a Reply [Doc. # 34]. Having considered the full record and applicable legal authorities, the Court **grants** Methodist's Motion.

**I.     BACKGROUND**

Plaintiff is a Registered Nurse who was diagnosed with Multiple Sclerosis ("MS") in 2002. She was hired by Methodist in 2008 as a "floater" Case Manager, working in different units as needed. In November 2009, Plaintiff was assigned as a Case Manager to the Transplant Unit, where she worked for several months.

In April 2010, Plaintiff was assigned as a Case Manager to the Medical/Teaching Unit. On April 30, 2010, Plaintiff asked to be moved back to the Transplant Unit because she could "not work with Margaret [Goodrich] and her unprofessional behavior." *See* April 30, 2010, Email from Plaintiff, Exh. J to Motion. Department Director Anoma Mullegama, Plaintiff's Manager Alma Villanueva, and Human Resources Representative Kathryn Materre scheduled a meeting with Plaintiff to discuss the request, but Plaintiff cancelled the meeting. *See* Communication Record, Exh. I to Motion.

In connection with her annual performance review in June 2010, Plaintiff identified transferring out of the Medical/Teaching Unit as her highest priority for the upcoming year.

In July 2010, Plaintiff first provided a written request for an accommodation for the fatigue caused by her MS.[1] At a meeting to discuss the request for an accommodation, Plaintiff presented a letter from her physician, Dr. George Hutton. Dr. Hutton recommended that Plaintiff "maintain a forty hour work week, with occasional nine hour work days." Methodist personnel at the meeting agreed to the

---

[1] Plaintiff alleges that she notified her supervisor orally that she had MS and resulting fatigue in April 2010.

accommodation recommended by Dr. Hutton, and reiterated to Plaintiff that she was not required to work more than 40 hours per week.

Also in July 2010, Methodist promoted the Case Manager assigned to the Orthopedics Unit, Audra White, to a management position. Before White assumed her management responsibilities, a recently-hired Case Manager was assigned to the Orthopedics Unit to train with her. Plaintiff was not reassigned to the Orthopedics Unit.

On August 4, 2010, Plaintiff emailed her supervisor asking to be reassigned to a different unit. At a meeting to discuss her request, Plaintiff stated that she was fine and that she wanted to know when Methodist was going to hire an extra person to work with her. Methodist personnel explained that they were in the process of hiring someone and, indeed, a second Case Manager was assigned to the Medical/Teaching Unit later that month.

Plaintiff began a period of leave under the Family and Medical Leave Act ("FMLA") on September 8, 2010. While on FMLA leave, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission - Civil Rights Division.

Prior to Plaintiff's return to work following her FMLA leave, she provided a letter from Dr. Hutton recommending a number of areas for accommodation. Dr.

Hutton did not include a recommendation that Plaintiff be reassigned to a different unit. Plaintiff's counsel explained that the primary accommodation was that she not be required to work more than 8 hours per day, and complained that failure to reassign Plaintiff to the Orthopedics Unit was discrimination under the ADA. Plaintiff returned to work in a floater Case Manager position on January 25, 2011.

On March 18, 2011, Plaintiff resigned from Methodist because she "heard about an opening at a home health agency."

Plaintiff filed this lawsuit in November 2012, alleging disability discrimination and failure-to-accommodate. After discovery was completed, Defendant moved for summary judgment. The Motion has been fully briefed and is ripe for decision.

## II.   SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any

affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex*, 477 U.S. at 322-23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

      For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

      If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the non-moving party.  *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings.  *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (holding that unverified pleadings do not "constitute competent summary judgment evidence").  Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden.  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).  Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case."  *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted).  In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts.  *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

## III.  ANALYSIS

### A.  Disability Discrimination Claim

The ADA prohibits discrimination against a qualified individual with a disability. *Munoz v. Seton Healthcare, Inc.*, 557 F. App'x 314, 318 (5th Cir. Feb. 18, 2014) (citing 42 U.S.C. § 12112(a); 12112(b)(5)(A)).  To establish a prima facie case of ADA discrimination, Plaintiff must demonstrate (1) that she has a disability; (2) that she was qualified for her job, (3) that she suffered an adverse employment action because of her disability, and (4) she was replaced by or treated less favorably than a non-disabled employee. *See id.* (citing *EEOC v. Chevron Phillips Chemical Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009)).

Plaintiff alleges that Methodist violated her rights under the ADA when it declined to transfer her to the Orthopedics Department.  It is undisputed that the position in the Orthopedics Department involved the same pay, benefits, and responsibilities.  Such a purely lateral transfer, whether required or denied, is not an adverse employment action under the ADA.  *See id.* (citing *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 771 n.8 (5th Cir. 2001)).  As a result, Defendant is entitled to summary judgment on Plaintiff's disability discrimination claim based on the failure to transfer her to the Orthopedics Department.

B.      **Failure-to-Accommodate Claim**

The ADA prohibits an employer from failing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship." *Feist v. Louisiana, Dept. of Justice, Office of the Attorney General*, 730 F.3d 450, 452 (5th Cir. 2013) (quoting 42 U.S.C. § 12112(b)(5)(A)). To avoid summary judgment on her "failure-to-accommodate" claim, Plaintiff must present evidence that raises a genuine issue of material fact that: (1) she is a "qualified individual with a disability;" (2) her employer knew about Plaintiff's disability and its limitations; and (3) her employer failed to make "reasonable accommodations" for Plaintiff's known limitations. *Id.*

Plaintiff argues that "to the extent that Methodist could not determine the appropriate accommodation, it is required to engage in the interactive process and discuss the situation with the employee." Response, p. 25. The regulations, however, provide that "[t]o determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation." 29 C.F.R. § 1630.2(o)(3) (emphasis added). "Of course, that which 'may be' necessary is not universally

required." *Picard v. St. Tammany Parish Hosp.*, 423 F. App'x 467, 470 (5th Cir. Apr. 28, 2011). The requirement that the parties engage in an interactive process "is not an end in itself – it is a means to the end of forging reasonable accommodations." *See Silva v. City of Hidalgo, Tex.*, __ F. App'x __, 2014 WL 3511685, *3 (5th Cir. July 17, 2014) (quoting *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999)). Only when the employer's failure to engage in the interactive process results in a failure to accommodate the employee's limitations does a violation of the ADA occur. *Id.* (citing *Loulseged*, 178 F.3d at 736). As a result, the failure to engage in the interactive process, without more, does not violate the ADA.

Plaintiff argues also that when she sought an accommodation, "Methodist should have granted her that accommodation." See Response, p. 25. The ADA, however, does not provide the employee with the right to choose her preferred accommodation. *See EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009). Similarly, the ADA does not provide the employee the right to choose what job assignment she receives. *See Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007). The Fifth Circuit does not "read the ADA as requiring affirmative action in favor of individuals with disabilities, in the sense of requiring disabled persons be given priority in hiring or reassignment over those who are not disabled."

*See Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997) (quoting *Daugherty v. City of El Paso*, 56 F.3d 695 (5th Cir. 1995)).

Plaintiff complained that she was suffering from fatigue and first requested that she not be required to work more than 40 hours per week. In support of this requested accommodation, Plaintiff presented a letter from her physician, Dr. George Hutton. He recommended that Plaintiff "maintain a forty hour work week, with occasional nine hour work days." *See* Hutton Letter, Exh. N to Motion. Methodist granted this request, reiterating to Plaintiff that she was not required to work more than 40 hours per week. Indeed, Plaintiff concedes that no Methodist employee ever informed her that she needed to work more than 40 hours per week or told her that she was not allowed to leave at the end of the day.

Plaintiff also requested that an additional case manager be assigned to her unit. The ADA does not require an employer to transfer any of the essential job functions to anyone else. *See Robertson v. Neuromedical Ctr.*, 161 F.3d 292, 295 (5th Cir. 1998). Nonetheless, Methodist assigned an additional case manager to Plaintiff's unit in late August 2010.

Plaintiff's primary request was to be transferred out of the Medical/Teaching Unit. Plaintiff's first request to be transferred out of the unit was on April 30, 2010 and was based on a conflict with a co-worker. The basis for the request to transfer out

of the unit was not to accommodate any limitations caused by her MS, but because she "can not work with Margaret [Goodrich]." *See* Email dated April 30, 2010, Exh. J to Motion. On May 3, 2010, Plaintiff stated that she and Margaret had talked, everything was "OK," and there was "no conflict at this time." *See* Communication Record, Exh. I to Motion. In her annual performance appraisal in July 2010, Plaintiff identified being reassigned to a different unit as a goal for 2011. She did not identify the goal to be reassigned as a request for an accommodation for the limitations caused by her MS.

In July 2010, Methodist promoted the Case Manager in the Orthopedics Unit, Audra White, to a managerial position in the Case Management & Social Work Department. Methodist did not reassign Plaintiff to the Orthopedics Unit. Instead, a recently-hired case manager was assigned to the Orthopedics Unit to train under White before she assumed her management responsibilities.

On August 4, 2010, Plaintiff again requested to be reassigned to a different unit. At a meeting to address her request, Plaintiff inquired when someone would be assigned to work with her in the Medical/Training Unit. Methodist management explained that they were in the process of hiring someone (who, in fact, began work later that month). Methodist proposed additional accommodations to deal with Plaintiff's fatigue, such as moving her office closer to the Medical/Teaching Unit.

Plaintiff stated that she was fine and just needed another case manager to work on the unit.

Before Plaintiff returned to work after taking FMLA leave in September 2010, her attorney provided a letter from Dr. Hutton identifying specific accommodations that he recommended. Methodist requested clarification, and Plaintiff's counsel stated that Plaintiff's only request was a Case Manager position that allowed her to work no more than 8 hours per day. Methodist had previously advised Plaintiff that she was not required to work more than 40 hours per week, and Dr. Hutton had previously stated that she could work occasional 9-hour days. Consequently, the requested accommodation had previously been granted in substance.

Plaintiff's counsel also complained that Plaintiff had not been transferred to the Orthopedics Unit, which is the focus of Plaintiff's failure-to-accommodate claim. The uncontroverted record establishes that a new employee was assigned to the Orthopedics Unit in order to train under Audra White. Plaintiff testified in her deposition that this decision was not based on Plaintiff's disability. *See* Plaintiff's Deposition, Exh. D to Motion, p. 224. The ADA "does not require an employer to give an employee with a disability his job of choice especially when there are qualified individuals who desire the same position." *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 622-23 (5th Cir. 2000). Not only has Plaintiff failed to present

evidence that the decision to assign someone else to the Orthopedics Unit and not to assign Plaintiff was a violation of the ADA, she has admitted that the decision was not based on consideration of her disability.

Methodist granted each request for accommodation recommended by Plaintiff's physician. Although not legally obligated to do so, Methodist granted Plaintiff's own request for a second Case Manager to be assigned to the Medical/Teaching Unit. Methodist did not grant Plaintiff's request to transfer to the Orthopedics Unit, but the ADA does not require an employer to accommodate an employee by allowing her to select her own assignments. The Court notes that Dr. Hutton at no point recommended that Plaintiff be assigned to the Orthopedics Unit. As a result, Defendant is entitled to summary judgment on Plaintiff's failure-to-accommodate claim.

## IV.     CONCLUSION AND ORDER

Plaintiff has failed to present evidence that raises a genuine issue of material fact in support of her claims against Methodist. As a result, it is hereby

**ORDERED** that Defendant Houston Methodist Hospital's Motion for Summary Judgment [Doc. # 27] is **GRANTED**. The Court will issue a separate final judgment.

SIGNED at Houston, Texas, this 14th day of **August, 2014**.

Nancy F. Atlas
United States District Judge